## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**LEANDRO PABLO CORONADO,**

       **Petitioner,**

         **v.**

**SECRETARY, DEPARTMENT OF HOMELAND SECURITY, et al.,**

       **Respondents.**

**Case No. 1:25-cv-831**

**JUDGE DOUGLAS R. COLE**

### OPINION AND ORDER

U.S. Immigration and Customs Enforcement (ICE) is currently detaining Petitioner Leandro Pablo Coronado pending removal proceedings. Coronado filed a Petition for Writ of Habeas Corpus (Doc. 1), requesting this Court to order his release or, in the alternative, to order Respondents to provide him a bond hearing. ICE, in turn, argues that Coronado is not entitled to a bond hearing and instead is subject to mandatory detention by statute. (Doc. 8). Resolving that dispute turns on one issue—whether Coronado falls within the scope of 8 U.S.C. § 1225(b)(2), and is thus subject to mandatory detention, or instead falls under 8 U.S.C. § 1226(a), in which case he is entitled to a bond hearing. Because the Court concludes that § 1225(b)(2) controls, the Court **DISMISSES WITHOUT PREJUDICE** Coronado's Petition (Doc. 1).

### BACKGROUND

The background facts are not entirely clear. The petition contradicts itself. And the documents Respondents attached to their Return of Writ appear to contradict the petition's version of events, even as to such basic matters as when the petitioner,

Leandro Pablo Coronado, first entered the country, and what his country of origin is. Luckily, for present purposes, none of those details turn out to be relevant.

Suffice to say that it appears Coronado is either a Nicaraguan, (Doc. 1, #4), or Guatemalan, (Doc. 8-1, #75; Doc. 8-2, #79), national. He first entered the United States in August 2016, (Doc. 1, #10; Doc. 8-2, #79), or sometime thereafter, (Doc. 1, #11; Doc. 8-1, #75 (stating he entered around August 2019)). Coronado does not allege he crossed the border at a designated port of entry, and so he necessarily concedes he entered without inspection by an immigration officer. At some point, ICE detained him and placed him in removal proceedings. (Doc. 1, #11). But they later released him on his own recognizance. (*Id.* at #10). It appears that during his original removal proceeding, he raised an asylum claim, and that an appeal of that claim remains pending. (*Id.* at #11). He further contends that, while it is pending, any removal proceedings would be subject to an automatic stay. (*Id.*).

While ICE released Coronado in 2019, a condition of that release required him to appear for regular check-in appointments. (*Id.* at #10). On November 10, 2025, during one of those check-in appointments, ICE detained Coronado in connection with his still-outstanding removal proceedings. (*Id.*; Doc. 8-2, #81). Since then, ICE has held him at Butler County Jail in Hamilton, Ohio, (Doc. 1, #10), and it apparently intends to continue detaining him pending completion of those proceedings, (*see* Doc. 8-2, #81).

That detention—and in particular the statutory basis for it—lies at the center of the current dispute. ICE says it detained Coronado under 8 U.S.C. § 1225(b)(2)(A).

(Doc. 1, #2). That provision makes detention mandatory. Indeed, the Board of Immigration Appeal (BIA) recently held that immigration judges lack jurisdiction to hear bond requests under this provision. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (B.I.A. 2025). So, if that statute controls, Coronado faces continued detention while his immigration case proceeds.[1]

Coronado filed this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241(c) on November 13, 2025. (Doc. 1, #1, 3). In that petition, he raises two challenges to his ongoing detention: (1) a violation of the Immigration and Nationality Act (INA), and (2) a violation of due process. (*Id.* at #11–12). His arguments on both, though, spring from a common source. He claims that he should be detained under 8 U.S.C. § 1226(a), not § 1225(b)(2). (*Id.* at #11). That matters because detention under the former is discretionary, not mandatory, which means he would be entitled to a bond hearing. (*Id.* at #2–3). According to Coronado, the failure to provide that bond hearing violates both the statute (ground 1) and the Fifth Amendment's Due Process Clause (ground 2).

Separately, Coronado filed a Motion for Declaratory Judgment and Request for Expedited Consideration (Doc. 7). There, he argues he is a member of the "Bond Eligible Class" as set forth in *Bautista v. Santacruz*, No. 5:25-cv-1873, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025), and is entitled to relief under that decision.

---

[1] On that front, the Court's understanding is that Coronado was set to appear before an immigration judge on his removal case on December 10, 2025. (Doc. 8-1, #75). The Court does not know whether that hearing transpired, or what the results may have been, but neither plays into the Court's resolution of this petition. Unless, of course, the immigration judge entered a final order denying removal. But the Court has no reason to believe that is the case.

(Doc. 7, #27–28). Respondents answered, (Doc. 8), and Petitioner replied, (Doc. 14). So the matter is ripe for the Court's review.

## LAW AND ANALYSIS

**A.      The Court Has Jurisdiction to Consider Coronado's Petition.**

Before reaching the merits of Coronado's challenge to his detention, the Court must begin by deciding whether it even has subject-matter jurisdiction to consider it. That is due not only to the Court's ever-present obligation to satisfy itself of its jurisdiction before acting, but also because Respondents argue that three separate statutory provisions deprive the Court of such jurisdiction here. Specifically, they point to 8 U.S.C. §§ 1252(b)(9), (e)(3), and (g). (Doc. 8, #4–9). The Court, however, disagrees. While Congress undoubtedly has limited district court review in the immigration context, the Court nonetheless has jurisdiction to review detention-related challenges in habeas, which is how Coronado proceeds here.

### 1.      The Relevant Habeas Statute Grants Broad Jurisdiction.

As a general matter, 28 U.S.C. § 2241 grants district courts broad jurisdiction to issue a writ of habeas corpus "as law and justice require." *Jones v. Hendrix*, 599 U.S. 465, 473 (2023). To that end, § 2241(c)(3) provides that a prisoner can bring a writ of habeas corpus when "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."[2] And habeas jurisdiction, once granted, is not easily revoked; there is a "longstanding rule requiring a clear statement of congressional

_____

[2] Coronado's Petition states that this court has jurisdiction under 28 U.S.C. § 2241(c)(5), not (3). (Doc. 1, #3). But § 2241(c)(5) applies when "it is necessary to bring him into court to testify or for trial," which is not relevant here. Section 2241(c)(3) is the relevant provision.

4

intent to repeal habeas jurisdiction." *I.N.S. v. St. Cyr*, 533 U.S. 289, 298 (2001). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Id.* at 301.

Of course, to say that a given matter falls within the scope of habeas is not to say that a petitioner is entitled to relief. To benefit from the writ's protection, the petitioner has the burden to prove by a preponderance of the evidence that their detention is unlawful. *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1143 (D. Minn. 2025) (collecting cases). But that is a separate question, and one to which the Court returns when it discusses the merits below. *See* infra Law & Analysis, Part B. For now, the question is solely one of jurisdiction, and on that front, habeas has a broad reach.

That said, in evaluating immigration-related petitions, courts also must remain mindful of the need to differentiate between challenges to orders for removal and challenges to detention in the interim. The former admittedly are beyond the scope of judicial review. But, while "the court may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001)); *see also Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018) (affirming the district court's jurisdiction over detention-based claims as distinct from the removal-based claims). And recall, here Coronado raises challenges to his pre-

5

removal detention. So the Court is comfortable that, absent some statutory counter-command, it has authority to proceed.

### 2. The Statutory Provisions Do Not Deprive the Court of Its Jurisdiction.

Urging a different result, Respondents point to three separate statutory provisions, each of which they says independently deprives the Court of any jurisdiction. (Doc. 8, #4–9). The Court addresses each below. But, to make a long story short, the Court disagrees.

### a. Section 1252(g)

Start with § 1252(g). Section 1252 generally is "Congress's comprehensive scheme for judicial review of removal orders." *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1256–57 (11th Cir. 2020). The specific provision states:

> (g) Exclusive jurisdiction. Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, [] no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien *arising from* the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added). Respondents interpret this provision to cover detention proceedings because "detention clearly 'arises from' the decision to commence removal proceedings against an alien." (Doc. 8, #48 (brackets omitted)).

But the Supreme Court has rejected such an expansive interpretation of that provision. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) [hereinafter *AADC*]. In *AADC*, the Court held that the provision "applies only to three

6

discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Id.* (emphases in original). These three actions do not "cover[] the universe of deportation claims" because "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.* In other words, even if the detention "aris[es] from" deportation proceedings in the sense that the detention is logically connected to those proceedings, the decision to *detain* or *take custody of* a noncitizen is distinct from the decision to *initiate* removal proceedings.

That distinction finds further support in the Supreme Court's express view of the role that the statutory provision plays. According to the Court: "Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion. It does not tax the imagination to understand why it focuses upon the stages of administration where those attempts have occurred." *Id.* at 485 n.9. But the "prosecutorial discretion" to which the Court refers is the discretion to decide (1) for which aliens to seek removal, (2) the bases on which to seek it, and (3) the manner of executing removal if ordered. That discretion does not extend to deciding whether a given alien is being held under § 1225(b)(2), on the one hand, or § 1226(a) on the other. That is a matter of statutory interpretation, not prosecutorial discretion.

Respondents cite to various out-of-Circuit cases that seemingly hold that § 1252(g) strips this Court of jurisdiction even in detention-only challenges. (Doc. 8,

#48–49). But those cases are meaningfully different. In *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016), for example, the petitioner was not challenging which statute applied to his detention. The case turned on a close review of the "specific factual allegations in his complaint," *id.* at 1203, in which he alleged "he was detained by means of misrepresentations and disregard for the Department of Justice's commitment in his plea agreement," *id.* at 1204. So, "[b]ecause Alvarez challenge[d] *the methods that ICE used to detain him* prior to his removal hearing" the court concluded § 1252(g) barred the challenge. *Id.* (emphasis added). Here, by contrast, Coronado does not challenge the facts surrounding his detention, or the methods that ICE used in connection with detaining him, but rather challenges which statute governs that detention. (Doc. 1, #2–3). So *Alvarez* is inapposite.

The government's citation to *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292 (3d Cir. 2020), meanwhile, is even further afield. *Tazu* involved detention *for the purpose of executing a removal order. Id.* at 297. That is, in *Tazu*, the petitioner was already subject to a removal order, and the government was merely detaining Tazu to effectuate it. *Id.* That factual setting closely tracks the language in § 1252(g) insulating a "decision or action" taken to "execute removal orders." But here, Coronado is not subject to a final removal order (at least not yet), so there is nothing to "execute." Rather, he "challenges only the legality of his detention," (Doc. 14, #142), pending completion of the removal proceedings. *See Alonso-Portillo v. Bondi*, No. 1:25-cv-306, 2025 WL 2483393, at *5–6 (upholding district court's jurisdiction when detainee "raise[s] legal questions regarding the government's statutory authority to

detain them" and collecting cases stating same). In short, § 1252(g) does not deprive this Court of jurisdiction.

### b. Section 1252(b)(9)

Next, turn to a similar provision, § 1252(b)(9). That provision states:

> (b) Requirements for review of orders of removal.

>> (9) Consolidation of questions for judicial review. Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from* any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, [] or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9) (emphasis added). Much like their argument regarding § 1252(g), Respondents argue that detention "arises from" an action taken to remove an alien. (Doc. 8, #51).[3] But the Supreme Court rejected this broad interpretation of the statute in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). There, the Court held that "the applicability of § 1252(b)(9) turns on whether the legal questions that we must decide 'aris[e] from' the actions taken to remove these aliens." *Id.* at 293. Admittedly, "arising from" could sweep in every action connected to immigration proceedings. *Id.* But the Court noted that "this expansive interpretation of § 1252(b)(9) would lead to

---

[3] They also quote § 1252(a)(5) to show that the petition for review must be filed with the court of appeals. (Doc. 8, #50). But that provision plainly applies only to review of an order of removal. (*Id.* (quoting 8 U.S.C. § 1252(a)(5)). So it cannot bar review of challenges to detention.

staggering results." *Id.* Moreover, "when confronted with capacious phrases like arising from, we have eschewed uncritical literalism leading to results that no sensible person could have intended." *Id.* at 293–94 (quotation omitted). The Court then turned to *AADC*'s interpretation of § 1252(g) because it "constru[ed] the very phrase that appears in § 1252(b)(9)," and it affirmed that "arising from" does not have such a broad sweep, whether in § 1252(g) or (b)(9). *Id.* Thus, Respondents' argument under this provision fails essentially for the same reasons it failed above.

Respondents cite Justice Thomas's concurrence in *Jennings* to support their view that "detention is an action taken to remove an alien." (Doc. 8, #52) (cleaned up). The problem with that argument, though, is that the majority expressly rejected Justice Thomas's interpretation: "We do not follow this logic. The question is not whether *detention* is an action taken to remove an alien but whether the *legal questions* in this case arise from such an action. And for the reasons explained above, those legal questions are too remote from the actions taken to fall within the scope of § 1252(b)(9)." *Jennings*, 583 U.S. at 295 n.3 (emphasis original).

Indeed, *Jennings* itself involved a challenge to prolonged detention of an immigrant detained under one of §§ 1225(b) or 1226(a). 583 U.S. at 291. And the Court decided that the legal questions involving detention in that case were "too remote" from the removal action for § 1252(b)(9) to apply. Said differently, § 1252(b)(9) "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process

10

by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (citation omitted).

Moreover, as the Supreme Court also noted, a blanket rule requiring challenges to detention to await review of the underlying removal order would make "claims of prolonged detention effectively unreviewable." *Jennings*, 583 U.S. at 293. Removal proceedings can take months, if not years. The detainee would have already suffered from the prolonged detention by the time the final order of removal could be reviewed. *Id.* Once again, distinguishing between detention and removal is necessary.

In his habeas petition, Coronado does not contest the removal proceeding itself, but rather which provision applies to his detention (§ 1225(b)(2), which mandates detention, or § 1226(a), which make detention discretionary). And the legal questions involved do not affect his removal. So § 1252(b)(9) does not bar judicial review either.

### c. Section 1252(e)(3)

Lastly, at least on the jurisdictional front, Respondents argue that § 1252(e)(3) limits jurisdiction for challenges like the ones Coronado raises here to one court—the District Court for the District of Columbia. (Doc. 8, #47–48). That provision states:

(e) Judicial review of orders under section 1225(b)(1).

(3) Challenges on validity of the system.

(A) In general. Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of:

(i) whether such section, or any regulation issued to implement such section, is constitutional; or

(ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not

11

> consistent with applicable provisions of this subchapter or is
> otherwise in violation of law.

8 U.S.C. § 1252(e)(3). Oddly, §1225(e) itself suggests that its reach extends only to "section 1225(b)(1)," but subsection (3)(A) says that the statutory provision covers "section 1225(b) of this title," with no textual limit to sub-section (b)(1). That distinction could potentially matter. Recall that Respondents claim Coronado is detained under § 1225(b)(2), not (b)(1). So if § 1252(e) only applies to § 1225(b)(1), then it does not even apply here. But if it instead applies to all of § 1225(b), including (b)(2), then the analysis is more complicated. Ultimately, though, the Court concludes that it need not resolve that scope question. That is because, even assuming the statutory provision applies, the Court finds that it does not bar this Court's jurisdiction.

Here's why. To consider Petitioner's requested relief in this action, the Court will need to answer the threshold question of whether Coronado's detention falls under the scope of § 1225(b)(2), or instead is governed by § 1226(a). But "[t]his threshold classification does not come within the scope of § 1252(e)(3)'s limitation, for this judicial question [i.e., which detention provision applies] isn't a 'determination under section 1225(b) and its implementation.' It is a determination whether an alien, so defined in the INA, even falls within that section." *Aguilar v. English*, No. 3:25-cv-898, 2025 WL 3280219, at *3 (N.D. Ind. Nov. 25, 2025) (emphasis removed). Nor does deciding which provision of the INA applies to Coronado's detention require the Court to evaluate the "validity of the system" itself, the topic to which § 1252(e)(3) is textually addressed. Indeed, at least as to Coronado's first claim for relief, he is not

even challenging the legality of § 1225(b)(2). He merely argues that the provision does not apply to him. In other words, like the petitioner in another recent case, Coronado "is not challenging the *implementation* of 8 U.S.C. § 1225(b)(2), and he does not dispute that § 1225(b)(2) requires detention of aliens detained under that subsection. Rather, Petitioner asserts that Respondents lack statutory authority to detain him under § 1225(b)(2) because that statute does not apply to an alien in his circumstances." *J.A.M. v. Streeval*, No. 4:25-cv-342, 2025 WL 3050094, at *1 (M.D. Ga. Nov. 1, 2025) (emphasis in original). So § 1252(e)(3) does not deprive the Court of jurisdiction to address that question. *Contrast Ardon-Quiroz v. Assistant Field Dir.*, No. 25-cv-25290, 2025 WL 3451645, at *3 (S.D. Fla. Dec. 1, 2025) (holding § 1252(e) did not strip district court's jurisdiction because petitioner did not raise systemic challenge), *with Patel v. Barr*, 475 F. Supp. 3d 422, 424–28 (E.D. Pa. 2020) (holding district court lacked subject matter jurisdiction under § 1252(e) because petitioners challenged a regulation regarding asylum as an "'unlawful effort' to undermine the United States asylum system at the southern border").

In sum, the Court is comfortable that it has jurisdiction over this matter. With that out of the way, the Court turns to the merits.

## B. Coronado Does Not Succeed on the Merits of His Claims.

Coronado raises two claims for relief: (1) a violation of the INA by detaining him under the wrong section, and (2) a violation of due process for detaining him without a bond hearing. (Doc. 1, #11–15). The Court takes them in that order. Ultimately, the Court concludes that § 1225(b)(2) governs Coronado's detention, and

that his detention without a bond hearing does not violate either that statute or due process.

### 1. Section 1225(b)(2) Applies to Coronado.

Respondents claim that § 1225(b)(2) governs and that it mandates detention for immigrants like Coronado. (*Id.* at #2). Coronado argues instead that § 1226(a) controls, meaning that detention is discretionary, and in turn entitling him to a bond hearing. (*Id.* at #11).

The Court begins its analysis by noting it is certainly not the first court to address this issue. To the contrary, the issue has popped up in courts across the country over the past several months. The reason for that sudden emergence tracks back to a recent change in Department of Justice (DOJ) policy. Generally, the DOJ (or more precisely, the Executive Office of Immigration Review (EOIR), an agency within the DOJ (*see id.* at #5)), advises the Department of Homeland Security (DHS), which houses ICE. Previously, the DOJ had advised DHS, and thus ICE, that § 1226(a) applied to aliens, like Coronado, who were inadmissible, but who nonetheless had been in the country for more than two years (beyond the time period for expedited removal under 8 U.S.C. § 1225(b)(1)(A)(iii)(II)) at the time ICE detained them. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). This past July, however, DHS, "in coordination with the [DOJ]," changed its policy and issued interim guidance that this category of immigrants falls

14

under § 1225(b)(2) instead.[4] (Doc. 1, #6). And on September 5, 2025, the Board of Immigration Appeals (BIA) held that § 1225(b)(2)(A) appropriately applied to this group, meaning that the group is subject to mandatory detention. *Matter of Yajure Hurtado*, 29 I. & N. Dec. at 220. As a result, immigration judges now lack jurisdiction to hold bond hearings for this category of aliens. *Id.*

Noncitizens, like Petitioner, have since challenged this determination in various federal district courts by way of habeas petitions. By this Court's count, since the DOJ's change in position, district courts have issued more than 700 decisions addressing the topic in one way or another. And Coronado correctly notes that most of those courts, some characterize it as an "overwhelming majority," *Maldonado Vazquez v. Feeley*, __ F. Supp. 3d __, 2025 WL 2676082, at *11 (D. Nev. Sep. 17, 2025), have held that § 1226(a) governs—meaning that he would be entitled to a bond hearing. (Doc. 1, #7–8 (listing cases)). But that response is by no means uniform. A growing number of courts have gone the other way. *See, e.g., Mejia Olalde v. Noem*, No. 1:25-cv-168, 2025 WL 3131942, at *1 (E.D. Mo. Nov. 10, 2025); *Chavez v. Noem*, __ F. Supp. 3d __, 2025 WL 2730228, at *4–5 (S.D. Cal. Sep. 24, 2025).

So what about this Court? After reviewing the statutory language and the relevant case law, this Court agrees with Respondents that § 1225(b)(2) properly

---

[4] Petitioner only provides a link to a photo of ICE's interim guidance dictating detention under § 1225(b)(2) instead of § 1226(a). (Doc. 1, #7 n.1); *see* https://perma.cc/X8ZY-G7RQ. Other courts have noted the lack of official guidance or policy as well. *See, e.g., Rojas v. Olson*, No. 25-cv-1437, 2025 WL 3033967, at *1 n.2 (E.D. Wis. Oct. 30, 2025). The policy does not impact the Court's analysis, so the exact details are irrelevant. Suffice it to say, this policy change has prompted numerous challenges and appeals.

applies to Coronado. Therefore, Coronado is not entitled to a bond determination hearing. But having said that, the Court recognizes that it is to some extent swimming against the tide. So the Court feels an obligation to explain in detail why it parts company with many of the other district courts that have considered this issue.[5]

In resolving a question of statutory interpretation, the Court "begin[s], as always, with the text." *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 391 (2017). And in this case, the Court largely ends there, as well. In the Court's view, the statutory language in both § 1225(b)(2) and § 1226(a) ineluctably points to the conclusion that the former, rather that the latter, controls here.

Section 1225(b)(2)(A) reads, in its entirety, as follows:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

No one contends that Coronado is "subject to subparagraphs (B) and (C)," so that language does not matter. As a result, in deciding whether this section applies to Coronado, the first question is whether he is an "applicant for admission." While that language is perhaps vague, the very same section of the statute expressly defines the

---

[5] To date, it appears that, since the policy change and BIA decision, only one appellate court, the Seventh Circuit, has addressed the issue. *See Castanon-Nava v. DHS*, __ F.4th __, 2025, WL 3552514, at *8 (7th Cir. Dec. 11, 2025). And there, while the court admittedly concluded that § 1226(a) governed, rather than § 1225(b)(2), that was not the central holding of the case. *Id.* Rather, the key issue there was the scope and impact of an earlier consent decree. *Id.* at *3–7; *see also, id.* at *14 (Kirsch, J., dissenting) (explaining that, in that judge's view, "[w]e need not decide if the district court was right about the meaning of [§ 1225 and § 1226]").

term. According to § 1225(a), an applicant for admission includes any "alien present in the United States who has not been admitted." And to be clear, "admission" specifically means *lawful* entry, not just any presence in the United States. 8 U.S.C. § 1101(a)(13)(A). Accordingly, "[a]n alien can have physically entered the country many years before and still be an applicant for *lawful* entry, seeking legal 'admission.'" *Mejia Olalde*, 2025 WL 3131942, at *3. And under that statutory definition, the term "applicant for admission" clearly covers Coronado. He is present here, and he was not admitted. If more were required, Coronado has applied for asylum, the appeal of which is pending. (Doc. 1, #11). That application seeks to allow him to remain in this country—i.e., to be admitted.

Likewise, he "is not clearly and beyond a doubt entitled to be admitted," or at least no "examining immigration officer" has so decided. 8 U.S.C. § 1225(b)(2)(A). So that language suggests he falls within this provision, as well.

The one potential wrinkle is the phrase "an alien seeking admission." *Id.* The contours of that phrase may matter because mandatory detention applies only "if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted." *Id.* (emphasis added). So if Coronado is not "an alien seeking admission," perhaps he is beyond § 1225(b)(2)'s reach. Indeed, many courts that have held that § 1225(b)(2) doesn't apply to folks like Coronado have largely relied on some version of that reasoning. *See, e.g., Bethancourt Soto v. Soto*, __ F. Supp. 3d __, 2025 WL 2976572, at *5, 7 (D.N.J. Oct. 22, 2025). According to these courts, "an alien seeking admission" is a subset of "applicants for

17

admission," and joining that subset requires something "beyond continuous presence in the country when an individual has been in the country for several years." *Mejia Olalde*, 2025 WL 3131942, at *3 (citing *Ochoa Ochoa v. Noem*, No. 25-cv-10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025)). Moreover, these courts observe that "seeking" is a present participle, meaning the alien's efforts at admission, whatever they are, must be recent and ongoing. *See*, *e.g.*, *Bethancourt Soto*, 2025 WL 2976572, at *5–6. So, they say, the second phrase in § 1225(b)(2) actually requires the immigration officer to make *two* determinations—whether the alien is "seeking admission" and whether he is "clearly and beyond a doubt entitled to admission." *See*, *e.g.*, *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *7 (N.D. Ill. Oct. 24, 2025) ("For Section 1225(b)(2)(A) to apply to Patel, the following conditions must be met: an "examining immigration officer" must determine that he is: (1) an "applicant for admission;" (2) "seeking admission;" and (3) "not clearly and beyond a doubt entitled to be admitted.")

This Court rejects that reading, however, for a couple of related reasons. First, the Court is not convinced that the term "alien seeking admission" refers to a *subset* of the category "alien who is an applicant for admission." 8 U.S.C. § 1225(b)(2)(A). Rather, the Court concludes that the more natural reading is that the phrase "alien seeking admission" is just another way of saying "alien who is an applicant for admission." After all, in normal usage, someone who is an "applicant for admission" is also necessarily "seeking admission." Indeed, that is what it means to apply for admission. An "applicant for admission" at a university, for example, is "seeking

18

admission" there. True, those applicants have actually filled out an application. But the immigration statute expressly "deem[s]" Coronado to be an applicant for admission based on his presence in the country alone. *See* § 1225(a)(1). That is, to continue the example above, Congress has expressly told courts to treat that alien as though he has actually applied for lawful entry. And under the natural reading of the phrase "applicant for admission," that in turn means that he is also "seeking admission."

That reading is also more consistent with the statutory text in a second and related way. As noted, the courts reading it the other way interpret the phrase "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted," as requiring the immigration officer to make both the determination as to whether the alien is "seeking admission" *and* whether that alien is entitled to be admitted. But that reading suggests that the phrase has one implied interpretive obligation (whether the alien is "seeking admission") and one express one (whether he is entitled to be admitted). If Congress intended an examining officer to make both determinations, the more natural way to state that would be to make both interpretive obligations express, perhaps along these lines (with changed text in brackets):

> if the examining immigration officer determines that an [applicant for admission is] seeking admission [and that the alien] is not clearly and beyond a doubt entitled to be admitted

Moreover, if the group "aliens seeking admission" were indeed a subset of the group "applicants for admission," one would also assume that Congress would have provided some directives as to the contours of that subset, e.g., factors to consider in deciding

19

whether a given "applicant for admission" (an expressly defined term) is also "seeking admission." But Congress did not do so.

In sum, read in context, the Court concludes that the rule in § 1225(b)(2) applies to all those aliens who are, or are deemed, "applicants for admission." So, unless an examining officer determines such an alien is clearly and beyond a doubt entitled to admission (which, as noted, has not happened here), the plain statutory text mandates detention.

The language in § 1226(a) does not change that result. It merely says:

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

(B) conditional parole; but

(3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

Of course, Coronado is correct that persons detained under this provision are subject only to discretionary detention. But one textual problem right at the outset— Coronado does not allege he was arrested "[o]n a warrant issued by the Attorney General." *Id*. And beyond that, for the reasons already described above, he falls within the plain text of § 1225(b)(2)(A). So, even if he might fall within § 1226(a), read broadly, he is a *better* fit for the text of § 1225(b)(2). *See Vargas Lopez v. Trump*, __ F.

20

Supp. 3d __, 2025 WL 2780351, at *9 (D. Neb. Sep. 30, 2025) ("Even if [Petitioner] might fall within the scope of § 1226(a), he certainly fits within the language of § 1225(b)(2) as well.").

The Supreme Court's decision in *Jennings* further confirms that result. True, Coronado argues that *Jennings* actually supports him. (Doc. 1, #11). But the government relies on *Jennings*, as well, (*see* Doc. 8, #61), and ultimately, it has the better of the argument. *Jennings* holds that § 1225(b)(2) is a "catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." 583 U.S. at 287. As already described, Coronado is an applicant for admission, and no one contends he qualifies for expedited removal under § 1225(b)(1). So if the Supreme Court's reference to "all applicants … not covered by § 1225(b)(1)" in fact means what it says, then Coronado necessarily falls under the "catchall provision." *Id.*

Admittedly, *Jennings* also goes on to separately discuss aliens who are "inside the United States," but who "do not have an absolute right to remain there." *Id.* at 288. This "group of aliens," the *Jennings* Court says, is governed by § 1226. *Id.* From this, Coronado argues that *Jennings* splits aliens into two groups—those who are detained at the border, and those who are in the country (whether lawfully or unlawfully), with § 1225(b)(2) applying to the former, and § 1226(a) the latter. In fairness, many of the courts that have concluded that § 1226(a) governs have also read *Jennings* that way. *See, e.g., Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1258–59 (W.D. Wash. 2025); *Ochoa Ochoa*, 2025 WL 2938779, at *4–5. And under that

reading, because Coronado has been "in the country for years," (Doc. 1, #11), § 1226(a) would govern.

But the Court concludes that this argument overstates *Jennings*. On this Court's reading, the portion of *Jennings* on which Coronado (and courts like those cited above) relies in fact refers only to those aliens who are in the country *lawfully*. *See* 583 U.S. at 288. Consider the opening sentence to that section of the opinion: "Even once inside the United States, aliens do not have an absolute right to remain here." *Id.* That phrasing—referring to aliens who do not have an "absolute right" to remain—suggests that the sentence is directed at aliens whose entry into this country at least created a contingent right to remain—i.e., those who were lawfully admitted. Aliens who entered the country unlawfully, by contrast, have no *right*, contingent or otherwise, to be here based on the mere fact of their (unlawful) entry.[6]

So, the way this Court understands *Jennings*, the dichotomy between § 1225(b)(2) and § 1226(a) goes something like this. The former statute applies to all "applicants for admission," including those aliens who entered unlawfully and are thus "deemed" applicants for admission under the definition set forth in § 1225(a)(1). So, if ICE detains an alien who entered without permission, mandatory detention under § 1225(b)(2) is appropriate.

---

[6] True, there are separate considerations, such as the Convention Against Torture or various asylum statutes, that may provide a legal basis for remaining in the country, even if a person *entered* unlawfully. But the key difference for understanding *Jennings* is that, for those who are lawfully admitted, the very fact of their admission creates a contingent right to be in this country.

The latter statute, by contrast, applies to those aliens who were lawfully admitted (say, pursuant to a visa). Their (lawful) entry created a right, although admittedly not an "absolute right," *Jennings*, 583 U.S. 288, to be in the country. If ICE decides to remove one of *that group* of aliens, then § 1226(a) controls. And in that setting detention is discretionary (except for that subset of such aliens who fall under § 1226(c)—those who have committed certain offenses within the country—as to whom detention is mandatory under that provision, a topic to which the Court returns below).

The Court further notes that this reading avoids rendering either § 1225(b)(2) or § 1226(a) mere surplusage, always an important consideration in questions of statutory interpretation. *See City of Chicago v. Fulton*, 592 U.S. 154, 159 (2021) (quoting *Yates v. United States*, 574 U.S. 528, 543 (2015) (plurality opinion) ("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). Rather, each statute governs as to those aliens to which it applies—§ 1225(b)(2) to those here unlawfully, and § 1226(a) to those here lawfully.

But Coronado also points to another part of § 1226—specifically § 1226(c)— that arguably presents a problem for the divide the Court proposes here. (Doc. 1, #9). As relevant to the current discussion, § 1226(c) provides that if a person is *both* (1) unlawfully present in the country, *and* (2) has been charged with, or is convicted of, one of a listed set of offenses, then the Attorney General must take the person into custody, *see* § 1226(c)(1), and can release that person only in a very narrow set of

23

circumstances, *see* § 1226(c)(4). So, the argument goes, why would § 1226(c) mandate detention for *only* those who meet *both* criteria above, if § 1225(b)(2) already mandates detention for those who are here unlawfully (i.e., who meet the first of the two requirements)? In other words, wouldn't the proposed reading of § 1225(b)(2) here render that aspect of § 1226(c) a nullity, running into the very canon about avoiding surplusage that the Court raised above?

In the Court's view, though, that argument fails for three reasons. First, § 1226(c) does not merely require detention. Instead, it affirmatively instructs the Attorney General to *take into custody* (as well as detain) any aliens who meet the two criteria. 8 U.S.C. § 1226(c)(1). Section 1225(b)(2), by contrast, imposes no corresponding command to initiate custody. In other words, if an alien who is present in the country unlawfully has not committed one of the listed offenses, the Attorney General has discretion not to order him taken into custody in the first instance. But, if that alien nevertheless *is* placed into custody, then § 1225(b)(2) mandates detention. On the other hand, if the alien is unlawfully present *and* has committed a qualifying crime, the Attorney General *must* take him into custody (and detain him). While admittedly overlapping in some sense, the two provisions impose different obligations as to initiating custody, and thus this reading of § 1226(c) does not render § 1225(b)(2) surplusage.

Second, as another court recently observed:

[W]hile the canon against superfluity "applies to interpreting any two provisions in the U.S. Code, even when Congress enacted the provisions at different times," *Bilski v. Kappos*, 561 U.S. 593, 608 (2010), it is "pretty weak when applied to acts of Congress enacted at widely

24

separated times," *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 373 (3d Cir. 1999) (internal quotation marks omitted).

*Mejia Olalde v. Noem*, 2025 WL 3131942, at *5 additional citations omitted). The current iteration of § 1225(b)(2) has been around since 1996. By contrast, it was just earlier this year that Congress added the mandatory detention provision to § 1226(c) regarding those here unlawfully who committed certain qualifying offenses. Congress did so when it passed the Laken Riley Act. Pub. L. No. 119-1, § 2, 139 Stat 3, 3–4 (2025). Given that passage of time, claims of surplusage as between that provision and § 1225(b)(2) carry less weight than they otherwise might.

And that leads to a third and related reason. Congress passed the Laken Riley Act against a backdrop of ICE's then-existing practice of providing aliens unlawfully in the country, even those who had been charged with, or convicted of, serious crimes, bond hearings pursuant to § 1226(a). *See* 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (DOJ's guidance following passage of Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA)). Congress's express disagreement with that practice as to those aliens who had been in the country unlawfully and who also committed a qualifying offense can hardly be read as ratifying that practice as to other aliens who likewise had been here for some period of time, but who had not committed such an offense. A new command that "you must take into custody those in Group A," is hardly akin to a command "and you shall not take into custody those not in Group A." And, in any event, as described above, the agency's position on the underlying question has changed—the DOJ no longer contends that those like Coronado are subject to § 1226(a). So, while acknowledging that some courts have

gone the other way, *see Rodriguez*, 779 F. Supp. 3d at 1256–57; *Patel,* 2025 WL 2996787, at *8–9, the Court concludes that the language in § 1226(c) about aliens who have committed qualifying offenses does not cut against the Court's above-stated understanding of § 1225(b)(2).

Finally and relatedly, Coronado also directly relies on DHS's and the BIA's long-standing (but now discontinued) practice of detaining immigrants like him (those who have been in the country for more than two years) under § 1226(a) as a basis for claiming that he is entitled to such treatment, as well. (Doc. 1, #6). He points, for example, to the DOJ guidance listed above, under which: "Despite being applicants for admission, aliens who are present without having been admitted or paroled … will be eligible for bond." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

But DHS's longstanding practice implementing that guidance doesn't carry the day here for a few reasons. For one, the DOJ's guidance actually confirms that petitioners like Coronado are "applicants for admission," even if it goes on to state that they can receive bond. *Id.* That is important because, as noted above, in the Court's view, applicants for admission as a textual matter fall within § 1225(b)(2). Even so, the Court acknowledges that the guidance also expressly calls for the possibility of bond, and that an agency's contemporaneous interpretations—like the BIA's practice and the regulatory pronouncement cited above—can be indicators of the law's meaning, notwithstanding *Chevron*'s demise. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385–86 (2024). But at the same time, even "a 'long-established practice' does not justify a rule that denied statutory text its fairest

26

reading." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015). Nor, regardless of the duration of the practice, need a court defer to an agency's *former* (and now-discarded) interpretation. *See Loper Bright Enters.*, 603 U.S. at 412. Indeed, if deference were warranted, one could argue that courts should defer to the DOJ's *current* interpretive guidance. But at bottom, the Court concludes that the statutory text, and context, plainly answers the relevant question, and that the Supreme Court's decision in *Jennings* confirms that reading, so the Court stops there, without deferring to the DOJ's interpretive views one way or the other.

In sum, Respondents can lawfully detain Coronado under 8 U.S.C. § 1225(b)(2). And because that provision requires detention, the Court rejects Coronado's claim that he is entitled to a bond hearing as a matter of statute.

## C. Coronado's Due Process Claim Also Fails.

That leaves Coronado's second claim, which seeks relief under the Fifth Amendment's Due Process Clause. (Doc. 1, #12–15). According to Coronado, his "rights have been violated by his detention and the futility of bond proceedings due to BIA's decisions and ICE directives and policies." (*Id.* at #12). And he proceeds to argue his entitlement to a bond hearing under the balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976). (Doc. 1, #12–15). The Court certainly agrees with Coronado that noncitizens are entitled to due process protections in removal proceedings. *See Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam). But the Court does not find that Respondents have violated Coronado's right to due process here.

27

The Supreme Court addressed a similar situation in *Demore v. Kim*, 538 U.S. 510 (2003), and concluded that mandatory detention pending removal proceedings does not violate due process. The detainee in *Demore* challenged his detention without an individualized bond hearing under § 1226(c). That provision, much like § 1225(b)(2), mandates detention in certain circumstances throughout the pendency of removal proceedings. *Id.* at 527–28. The *Demore* detainee noted that the length of removal proceedings is indefinite, and argued that indefinite detention violates the Due Process Clause. But the *Demore* Court rejected that premise. According to the Supreme Court, detention under § 1226(c) has a definitive end-point—the end of the removal proceedings—and thus a noncitizen is not subject to indefinite detention. *Id.* at 529. True, the Supreme Court earlier had found that indefinite detention of immigrants *after* an order of removal violated due process when there was no reasonable likelihood of their removal. *Zadvydas*, 533 U.S. at 697. But that was largely because there was "no obvious termination point" to post-removal detention "unlike detention pending a determination of removability." *Id.* Detention under § 1226(c), by contrast, has a clear termination point: the end of removal proceedings. *Demore*, 538 U.S. at 529–30. And lest there be any doubt, *Jennings* reaffirmed this holding when it rejected the Ninth Circuit's imposition of a six-month limit on mandatory detention under § 1225(b). 583 U.S. at 302. According to the Supreme Court, "[n]othing in the text of § 1225(b)(1) or § 1225(b)(2) even hints that those provisions restrict detention after six months." *Id.* at 298. Moreover, like

§ 1226(c), § 1225(b)(2) sets a clear endpoint for detention—the conclusion of removal proceedings.[7] *Id.* at 297.

Relatedly, Coronado argues that he is not a flight risk or a danger to the community, so there is a "high probability of erroneous deprivation of [his] liberty." (Doc. 1, #13). But the Court in *Demore* affirmed that immigration authorities can deny bond to detainees "even without any finding of flight risk" or dangerousness. 538 U.S. at 524–25. So just as in *Demore*, Coronado's "claim must fail. Detention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 531.

## D.   The Court Declines to Address Exhaustion.

Respondents also argue that Petitioner did not exhaust his administrative remedies. (Doc. 8, #52–55). But nowhere in the relevant statutes do Respondents point to any command that Coronado must exhaust his administrative options. And "when it is not mandated, the decision to require exhaustion is within the sound discretion of the court." *Lopez-Campos v. Raycraft*, __ F. Supp. 3d __, No. 2:25-cv-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025) (citing *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). The Sixth Circuit sometimes imposes a prudential exhaustion requirement, but it has not done so in the context at issue here, at least not yet. *See generally Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747–48 (6th Cir. 2019) (reviewing the doctrine of prudential exhaustion when exhaustion is

---

[7] To be clear, once a removal order is entered, an alien cannot be detained indefinitely and must be removed within a reasonable period of time. *Zadvydas*, 533 U.S. at 701.

not mandated by statute or agency regulation). All that said, though, because the Court concludes that Coronado is properly detained under § 1225(b)(2), the Court declines to address the merits of Respondent's exhaustion argument.

**E.    If Coronado Is Entitled to Relief as a Class Member in a Separate Action, He Should Seek Such Relief in The Court That Issued the Decision.**

Finally, Coronado separately seeks relief on the ground that he is a member of the "Bond Eligible Class" in *Bautista*, 2025 WL 3288403, at \*9. (Doc. 7, #27). As the Court understands it, that argument proceeds along these lines. In a November 25, 2025, decision, the *Bautista* court apparently certified a class that, at least according to Coronado, includes him. That court then also entered the same declaratory relief for that class that it had for the named petitioners in a summary judgment decision that it entered in the same case five days earlier, *Bautista v. Santacruz*, 5:25-cv-1873, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025). In that earlier decision, the court found that § 1226(a) applied, so ICE's policy of detaining immigrants under § 1225(b)(2) was unlawful. *Id.* at \*10–11. So, Coronado claims, under the *Bautista* Order, this Court must likewise enter declaratory relief and order ICE to provide him a bond hearing or release him. (Doc. 7, #27–28).

The problem with that argument is that it misunderstands how separate actions work. If another federal district court in another district has ordered a party (e.g., ICE) to do something, and the party is failing to follow that order, the relief for that failure primarily lies before the court that entered the order in the first instance. In other words, if Coronado or his attorneys contend that ICE (or some other

30

government agency or official) is defying the *Bautista* order, they should raise that matter before the presiding judge in that action. They cannot simply ask this Court to enforce that court's order. Indeed, if their belief is that the subject matter of the instant litigation is already pending before another court, perhaps the more appropriate path would be for them simply to dismiss this action in favor of that earlier-pending proceeding. In any event, the Court denies Coronado's request for declaratory relief. (Doc. 7).

*     *     *

One final note. Nothing in this decision should be read as expressing any view on whether, *as a policy matter*, Coronado should (or should not) be subject to mandatory detention while his removal proceeding is pending. Indeed, the Court could see reasons why bond makes sense for those aliens who are not a flight risk or danger to the community. After all, detention can be expensive, and a person who is detained can no longer work, depriving the economy (as well as those who depend on that person) of the contributions the detained person otherwise might make. At the same time, one could argue that the benefits of detention, in terms of avoided risk, that arise from a bright-line rule make the above-noted costs worthwhile. Or the argument may be something else entirely. But that just illustrates the point. Under our constitutional design, this Court plays no role in answering that question. Rather, the Court's sole task here is to decide (1) how *Congress* answered that question in the statutory language that it enacted and that the President signed into law, and (2) whether Congress's answer to that question comports with any and all limits that

31

the Due Process Clause (as the Supreme Court and the Sixth Circuit have interpreted it) imposes. In this Opinion and Order, the Court has done its level best to answer those questions, and only those questions.

## CONCLUSION

For the reasons discussed above, the Court **DISMISSES WITHOUT PREJUDICE** Coronado's Petition for Habeas Corpus (Doc. 1) and **DENIES** Coronado's Motion for Declaratory Judgment and Request for Expedited Consideration (Doc. 7).[8] The Court further **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

**SO ORDERED.**

December 15, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

---

[8] The Court dismisses without prejudice in the event that Petitioner wishes to pursue relief as a potential class member in *Bautista*, 2025 WL 3288403, at *9.

32